A. HARTMAN & CO., PLAINTIFFS AND APPELLANTS, *v.* PORRATA ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Guayama in an Action of Ejectment.

No. 2103.—Decided March 15, 1921.

EJECTMENT—BOUNDARIES—EVIDENCE.—When in an action of ejectment arising from a controversy about the dividing line between two properties the evidence with regard to the said line is contradictory, the court should adjust the conflict, and if the preponderance of the evidence is in favor of the plaintiff the action of ejectment should be sustained without the necessity of a previous proceeding for fixing the dividing line, for it may be fixed in the action of ejectment.

ID.—APPEAL.—In accordance with section 306 of the Code of Civil Procedure, as amended in 1906, the Supreme Court will review the facts and enter such judgment as the trial court should have entered.

The facts are stated in the opinion.

*Mr. T. Bernardini* for the appellants.

*Mr. J. C. Ramos* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

This was an action in revendication in which A. Hartmann & Co. was the complainant and the defendants were Elvira de Porrata Doria and Agustín Bird Elías.

We agree with a number of the findings of fact made by the court below, which we have verified by an independent examination, and we shall number them in order as follows:

"1. That the plaintiff is an industrial, mercantile partnership doing business in the town of Arroyo and with capacity to sue and to be sued; that the defendants are of age, Elvira Porrata Doria residing at Ponce and Agustín Bird Elías in this city; that both have submitted themselves to the jurisdiction of this court.

"2. That the plaintiff is the owner of a rural property of 398.16 acres lying in Jobos ward and known as Reunión, bounded on the north by the Rosada property belonging to Juan H. Blondet and the Melanía property belonging to Carlos Blondet; on the south by the ocean and the Cayures property formerly a part of the estate of Pedro Amorós, and the Mercedes property belonging to the estate of Ignacio Díaz; on the east by the property of Santiago Porrata and said Mercedes property, and on the west by the Cayures property, by

La Gregoria belonging to Jesús María Texidor, and by the property known as Rosa. A parcel of land having been segregated from this property and transferred to Jeremiah Smith, the area of the property was reduced to 364.83 acres and was acquired by the plaintiff in the suit against Rafael and Mateo Amorós Alsina.

"3. That defendant Elvira de Porrata Doria is the owner of a tract containing 46.06 acres of land situated in Jobos ward of this municipal district, bounded on the north by the old bed of the Guamaní river, by the estate of Boyer and by the Palmira property; on the south by the Mercedes property and by lands of Erasmus Porrata, and on the west by the Reunión property, which is separated therefrom by the river, the said property having been acquired by inheritance.

"4. That the former owners of Reunión, Messrs. Amorós, held the said property as owners and were in possession of the property belonging to the defendant Mrs. Porrata Doria as lessees. That while in possession of both properties and with a view to the better enjoyment thereof, Messrs. Amorós tore down and removed the fence separating the said properties, thereby eliminating the boundary line and converting the said two estates into one single property, in which condition it remained in their possession for a great many years.

"5. That while the properties were thus consolidated Messrs. Amorós alienated their rights to the Reunión property and transferred or assigned the lease to the defendant's property, both properties falling into the hands of the plaintiff, the Reunión property in fee simple and the property of defendant Porrata Doria under lease. That the plaintiff continued to possess both properties as one single property until January 5, 1917, when Elvira de Porrata Doria leased her property to the other defendant, Agustín Bird Elías.

"6. That on February 1, 1917, the lease having expired, the plaintiff delivered the property of the defendant to the new lessee, Agustín Bird Elías.

"7. That the said Bird having entered into possession of the property, the plaintiff, through its employees and agents, endeavored to replace the fence denoting the dividing line between the two properties and sought to erect the same on the right bank of the Guamaní river. That Bird, as lessee and representative of the defendant, objected to the raising of the fence at that place, contending that the boundary line of the Reunión property was along a masonry water way or canal used for irrigation purposes and not at the place where the plaintiff sought to raise it.

"8. That between the right bank of the Guamaní river, where the plaintiff claimed his boundary line passes, and the masonry canal at the place where the defendant claims the boundary of Reunión is situated, lies a tract of land containing 13.09 acres known as Pastos de las Quintinas, which is the subject-matter of this litigation."

Then the court goes on to say:

"If we examine the evidence introduced by both parties we shall see that its object is not to prove the ownership of the parcel of land sought to be recovered, but to fix the boundary which separates said properties and to determine where the boundary fence should be set up. The oral evidence is contradictory and principally refers to statements which the witnesses claim were made to them by the former owners, Amorós Brothers, but we cannot determine therefrom which of the two litigants is the real owner of the parcel of land claimed, this being a matter to be decided after determining the boundary line of the two properties.

"If we examine the documentary evidence we shall see that the title deeds of the plaintiff referring to this boundary, line, that is, the eastern boundary of the Reunión property, show that this property adjoins the property of Santiago Porrata, without specifying any mark determining said boundary.

"If we examine the documentary evidence of the defendant we shall observe that it refers to the Reunión property as the western boundary and states that the dividing line is the river. It appears, however, from an ocular inspection made by the court, that the bed of said river has changed greatly during recent years and that at present there are several dry beds of great breadth, it being unable to determine to what bed the said instrument refers.

"The parties have presented a great number of plans, but all of these are made in keeping with their respective claims or contentions. Thus we have the plan marked 'Plaintiff's Exhibit No. 17,' where the defendant's properties and the tract in dispute are shown. In said plan the bed of the river is traced in such a manner as to allow to the property of the defendant an area of 49.04 acres. This plan has been admitted by the expert to be accurate. On the other hand we have defendant's plan 'A' where the bed of the river is so situated that it reduces the defendant's property to 36.13 acres, that is, a difference of twelve acres from the area shown by plaintiff's plan. And this plan is also correct, the difference consisting in the situation

of the river bed, according to the selection thereof from the various beds figuring in the plan.''

The court then says that as the case is one of revendication, the party complainant should prove the ownership of its land in such a way that it could be identified in case of the execution of the judgment without further explanation, and the court further goes on to say that the whole proof in the case tended to show what is the boundary which separates the two pieces of property and accordingly as that boundary should be determined, the piece of land which is claimed would belong to the plaintiff or the defendant. The court says that if the boundary line passes the place which the proof of the defendant showed, there is no doubt that the piece of land belongs to her; that if the boundary line passes the spot which the complainant alleged, then the piece of land belongs to the complainant.

The court also says that this is a question that could not be decided in a suit brought exclusively to revendicate a piece of land, but that if the boundary line could not be reached by common consent by reason of its disappearance, a proceeding ought to be begun to fix the boundary.

Then the court made certain conclusions of law, which it is unnecessary to reproduce, and rendered a judgment in which the essential conclusion was as follows:

''The court is of the opinion that, based on the evidence adduced and the admissions of the parties, it should render, as it does, the following judgment: That the law and the facts are in favor of the defendants and against the plaintiff and therefore that it should, as it does, dismiss the complaint without prejudice to the institution of a further suit after the boundary line has been determined, plaintiff to pay the costs, disbursements and attorney fees.''

We entirely disagree with this finding or conclusion of the court. When three sides of a quadrangle, or all but one of another geometrical figure, are fixed and only a single line is necessary to complete the figure, there is no doubt

that a piece of land can be completely identified so that the marshal could put a complainant into possession thereof as soon as the missing line is determined. In the case of *Siragusa et al.* v. *People of Porto Rico et al.,* 18 P. R. R. 579, for example, cited by the court, the difficulty, among others, was that there was no proof tending to show one of the boundaries. If the complainants in that case had been able to fix by a preponderance of proof the missing boundary and overcome the other difficulties the result would have been different. There was a lack of proof in that case of one of the boundaries. There is no lack of proof in this case, although there may be a conflict in the evidence. Such a conflict, if there was one, the court should have determined.

The appellee says that this was a case of conflict in the proof decided by the court below. From the findings and from the judgment in this case there is no doubt that the court refused to decide whatever conflict there was. It said that the complainants had mistaken their present cause of action. So that the court having failed to decide the question in issue, namely, what was the principal eastern boundary of the Reunión property, this court would have a choice of sending the case back to have the boundary determined or of deciding the case itself. We regard the evidence of the complainant as so strong and the conflict raised by the proof of the defendant as so weak that we feel it our duty to decide the case in this court as we conclude it ought to have been decided in the court below.

For convenience of discussion we shall speak of the land of the complainants as Reunión and of the land of the defendants as Porrata, as the said lands were familiarly described by the witnesses.

The complainant introduced in evidence two leases wherein the western boundary of Porrata was said to be Reunión, separated by the river. One of these leases was to the former owners of Reunión and the other was to the present

lessee of Porrata, Agustín Bird, who was made codefendant in the suit. The appellees say that this description was a mistake, but as emanating from them it is exceedingly strong *prima facie* evidence. It is not sufficient to say that this was the mistake of the notary, especially in view of the documentary evidence.

There was proof tending to show that when the former owner of Porrata leased this land to the former owners of Reunión he delivered to them a plan, which shows that the western boundary of Porrata is the river Guamaní and that on the other side of it is Reunión.

Another plan admitted by the court, and we think of undoubted authenticity, showed the former boundaries of the Amparo property with Reunión to the west and the river separating the lands. The Amparo was originally owned by the predecessors in title of Elvira Porrata and Porrata was segregated from Amparo. Similarly, a deed proceeding from defendant Elvira Porrata, in which she took possession of Porrata, makes the same description. The same description appears in a judgment of expropriation given against Elvira Porrata by the District Court of Guayama.

There is another plan in the record which is of slightly less probative force as emanating from the complainants, but which is a copy of a plan made by Antonio J. Porrata in 1865, was turned over to the complainants by their predecessors in title and shows the same river as the western boundary of Porrata.

And from official sources the complainants introduced in evidence a plan of Reunión made in 1876, which shows that the said property has the river for its eastern boundary and the property Amparo on the other side of the river.

Also, of slightly less probative force as coming from the complainants, but was made *ante litem motam,* a sale by the owners of Reunión to the American Railroad Company, showing the river as the eastern boundary.

There was likewise very strong and convincing evidence to the effect that when the former lessees of Porrata, who were the owners also of Reunión, took charge of both properties they tore down a fence which stood on the western bank of the river Guamaní and placed it further to the west along a canal. In other words, they put up a fence within Reunión at a short distance west of the river. This they did to join the land so fenced on the west bank of the river to Porrata on the east and make the whole into a meadow for cattle. We may advert here that a good deal of the testimony of the defendant is explicable on the theory that with the change of the fence everybody spoke of the land to the east of the fence as Porrata or La Porrata.

Of the fact that Agustín Bird put the western boundary of Porrata where this fence formerly was and against the will of the complainants, the proof leaves no doubt. The part of the land that lies between this fence and the river known principally as Las Quintinas is the land sought to be recovered in this suit.

Within this strong *prima facie* case made out by the complainants the burden of proof was shifted to the defendants. They showed no documentary proof not emanating from them and not of recent date which placed the western boundary of Porrata on the other side of the river Guamaní. Their verbal proof was partly explicable, as we have said before, by the fact that witnesses in former times saw a pasture or meadow with a fence on the western side of the river for its western boundary.

The verbal testimony of the defendants would have to be very strong indeed to overcome the preponderance created by the complainant's evidence, all of which we have not attempted to discuss. For instance, the first plan of Amparo introduced in evidence, shown to have proceeded originally from the defendants' predecessors, in its historical resumé on the right side of the plan says that the western boundary

is the river and that on the other side is Reunión. This is signed by Antonio J. Porrata, who was one of the former owners.

Independently of the witnesses who give hearsay testimony proceeding from statements of former owners, as pointed out by the court below, the oral testimony of the defendants mainly consists in the declaration of Elvira Porrata herself. This declaration is based principally on her memory of the physical situation when she was a child of eight. A gate, for example, would take her through Las Quintinas to her own house. Whether the pasture of Porrata was leased then to the owners of Reunión does not appear very clearly, but that she went through Las Quintinas is no satisfactory evidence that the title thereto was in her predecessors. *Non constat* that this was suffered by the then owners of Reunión.

A very important piece of testimony was the statement of surveyor Caballero who showed that, taking the westernmost bed of the river Guamaní, which had been shown to have several beds, the property of Elvira Porrata to the east of the river would consist of 49 acres. The expert of the defendants, Clausells, definitely agrees that if the boundary is placed where Caballero placed it, there would be at least that amount of land belonging to Elvira Porrata to the east of the river, or rather to the east of its westernmost bed. The appellees in their brief say that the surveyor of the complainant took the easternmost bed of the river while the surveyor of the defendants took the westernmost bed. One needs only to read the testimony of Clausells to find that this is not a correct statement. He distinctly says that he and Caballero had compared plans, the only difference between them being that Caballero took the westernmost bed and that he took a bed more to the east. Both plans of the surveyors were introduced in evidence. Clausells was asked if he could show the amount of land included

between the two beds of the river shown on the two plans, and the court took a recess of fifteen minutes to allow him to do so. Not only did he state that the difference was some three or more *cuerdas,* but his pencil marks still appear on the plan and show that he made his calculations by fixing lands from the boundary made by him to the west, or towards Reunión.

Clausells was closely cross-examined and showed that if the property to the west of the river in controversy was added to the property to the east of the river, the whole farm of Porrata would amount to 62 acres. He allowed some 36 acres to the east of the river in the plan as drawn by him, but he showed that the bed of the river made up several acres more and that the difference between the beds above made over three acres more, but, as we have said, he agreed that the plan of Caballero was accurate, allowing for the difference in the two beds of the stream.

It is true, as was also shown in the opinion of the court and the proof, that the record of Reunión as made in the registry of property did not mention the river as lying to the east, but this fact could not affect the question of the true boundary as shown by the rest of the evidence.

It is apparent to us that if Elvira Porrata were allowed to take the land to the west of the river, her total holdings would amount to nearly 60 acres, allowing for the bed of the stream, while it is substantially admitted and found by the court that her whole land only amounts to 46 acres. The appellees say that the court found that the surveyors of the complainant took the easternmost bed and the surveyor of the defendants took the westernmost bed, but this the court did not say. The court said in effect that if the true boundary of Porrata was the bed of a river as drawn by Clausells, Elvira Porrata would be limited to 36 *cuerdas* and that if the bed fixed by Caballero was the true one she would have her due 46. In other words, as we see it, the court's

doubt arose from the fear in his mind that if it should turn out that the boundary bed of the river was further to the east and the complainant attempted to go as far as this eastern bed, the holding of Elvira Porrata would necessarily be reduced and as the judge was not clear in his mind which was the true bed of the river he sent the parties out of court to determine such true boundary.

Indeed, we may say that the court's finding shows definitely that the boundary is the river and when it is clearly shown, as it was, that the complainant is only claiming the land that lies to the west of the westernmost bank of the river, we think the decision of the court in itself demonstrates that the complainant was entitled to recover. In addition to what we have said about the agreement between the experts, other things were shown by their testimony and the testimony of others, and that is that while the river Guamaní is ordinarily dry, when the water runs it is more apt to run in the westernmost bed. Clausells said he took the deepest bed, but he also pronounced it a dry bed. Caballero said that he took the bed where the water ran, or words to that effect, and he is borne out by at least one other witness. The variation of the beds of the streams, or where the water ran, was not the object of much discussion in the suit.

Therefore we find, (1) that the complainant is the owner of a piece of land described in the second finding of the District Court of Guayama, *supra;* (2) that the eastern boundary of that land is the westernmost bed of the river and that the lands in controversy, as set forth in the eighth finding of the court below, lie within the lands belonging to the complainant as described in the foregoing finding; (3) that the defendants took possession of the land set forth in said eighth finding without title thereto and are withholding the same against the will of the complainant, the rightful owner.

We conclude that the complainant has shown a complete

right to revendicate the land so claimed and that the judgment rendered by the District Court of Guayama must be reversed and another rendered for the complainant, as will be described in the judgment.

                                                        *Reversed.*

Chief Justice Hernández and Justices Del Toro, Aldrey and Hutchison concurred.